# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Gray Samsung Galaxy S20 Plus; 910-581-5539;<br>IMSI: 311480532201690 | )<br>)<br>)     Case No.  '23 MJ0483<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2241 | Knowingly Cause a Peron to Engage in a Sexual Act by Using Force |
| 18 U.S.C. § 2244 | Knowingly Causing Sexual Contact Without Permission |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Celia Rosa, NCIS Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephone__ *(specify reliable electronic means)*.

Date: February 10, 2023

*Judge's signature*

City and state: San Diego, California     Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A
## ITEMS TO BE SEARCHED

The following property is to be searched:

    Gray Samsung Galaxy S20 Plus

    Telephone number 910-581-5539

    IMSI: 311480532201690

    ("**Target Device**")

**Target Device** is currently in the Naval Criminal Investigative Service's possession at 120101 De Luz Road, Oceanside, California 92058.

# ATTACHMENT B

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

The **Target Device** includes any storage devices, such as SIM cards or flash memory devices attached to, inserted in or seized with the device, will be analyzed and the following data will be seized only to the extent that it contains or depicts evidence of violations of 18 U.S.C. §§ 2241 and 2244 during September 1, 2021 through December 15, 2021:

- Evidence reflecting use, dominion and control of the device; and

- Communications, records, or data including but not limited to phone call logs and text messages between **ROBERSON** and D.P.

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Special Agent Celia Rosa, being duly sworn, hereby state as follows:

**INTRODUCTION**

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

>Gray Samsung Galaxy S20 Plus
>
>Telephone number 910-581-5539
>
>IMSI: 311480532201690
>
>subscribed to Richard Joseph **ROBERSON**, 328 Tierra Blanca Ave., Camp Pendleton, California.
>
>("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, Authorization is being sought to search the **Target Device** for the items described in Attachment B, which items constitute evidence, fruits, and instrumentalities of violations of Federal laws, namely, 18 U.S.C. §§ 2241 and 2244, knowingly cause another person to engage in a sexual act by using force against said person and knowingly causing sexual contact without permission. The alleged sexual abuse occurred on board Marine Corps Base (MCB) Camp Pendleton, California, an area of exclusive federal jurisdiction. **Target Device** is currently in the Naval Criminal Investigative Service's possession at 120101 De Luz Road, Oceanside, California 92058.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant

1

for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## EXPERIENCE AND TRAINING

3. I am a Special Agent (SA) with the Naval Criminal Investigative Service (NCIS). I have been employed with NCIS since 2019 and am assigned to the General Crimes Squad at Marine Corps West Field Office in Camp Pendleton, California. I regularly investigate felony crimes having a Department of the Navy nexus, to include, but not limited to, death investigations, adult and child sexual assaults, domestic and aggravated assaults, and child abuse and child exploitation and child pornography investigations.

4. I am also currently assigned to the San Diego Internet Crimes Against Children (ICAC) Task Force. This task force includes members of the San Diego Police Department, San Diego County Sheriff's Department, U.S. Postal Inspection Service, Federal Bureau of Investigation, NCIS, U.S. Attorney's Office and the San Diego County District Attorney's Office. I graduated from the Criminal Investigator Training Program, and NCIS Special Agent Basic Training Program at the Federal Law Enforcement Training Center (FLETC). I received training in various topics, including but not limited to: constitutional and criminal law, operational activities, physical tactics, behavioral sciences, use of force, and ethics and core values. Prior to graduating from FLETC, I received a master's degree in Homeland Security and Emergency Preparedness from Virginia Commonwealth University. I was a member of the Marine Corps West Major Case Response Team (MCRT) which presented me with multiple opportunities to participate in several search warrants and command authorizations for search and seizures as part of felony level criminal investigations. Additionally, I have participated in the

performance of my duties in the successful seizure of both physical and electronic/digital evidence.

5. As a federal agent, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. In preparation of this affidavit, I have discussed the facts of this case with other law enforcement agents and SAs within NCIS.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in sexual assault investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in sexual assault cases may yield evidence:

    a. tending to show the prior voice, text, and/or image communications between the alleged perpetrator and the alleged victim to establish the scope of any pre-existing relationship;

    b. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    c. tending to establish the timeline of events that occurred on the night of the alleged sexual assault.

## FACTS IN SUPPORT OF PROBABLE CAUSE

7. On December 14, 2021, D.P., was interviewed by Oceanside Police Department (OPD) and reported she was sexually assaulted on board MCB Camp Pendleton, California (Camp Pendleton) on December 13, 2021, **ROBERSON**, at his residence: 328 Tierra Blanca Avenue, Oceanside, California. D.P. reported she and **ROBERSON** are co-workers at Domino's on board MCB Camp Pendleton. D.P. met **ROBERSON** approximately three (3) to four (4) months prior to the night of the alleged sexual abuse at Domino's. D.P. and **ROBERSON** exchanged phone numbers and communicated via text and phone calls. During the 3–4-month period leading up to the sexual abuse, she had gone to **ROBERSON's** residence various times for the sole purpose of hanging out with and playing video games with his daughter. D.P. and **ROBERSON** exchanged text messages during the 3–4-month period leading up to the night of the incident; however, D.P. stated **ROBERSON's** preferred method of communication was via a phone call. D.P. texted **ROBERSON** on various occasions to ask if she could go to his residence to hang out with his daughter, including the night of the incident. D.P. no longer has the text messages between her and **ROBERSON**, as she obtained a new cellular phone since the incident.

8. At approximately 7:00 PM on December 13, 2021, **ROBERSON** picked up D.P. from her on base residence to hang out with **ROBERSON** and his 16-year-old daughter. Prior to **ROBERSON** picking up D.P., the two of them communicated via text message and phone calls to make the arrangements for that night.

9. At some point **ROBERSON's** daughter left D.P. and ROBERSON alone and D.P. and **ROBERSON** started to consume alcohol. D.P. reported she consumed approximately five (5) shots of an alcoholic beverage before she felt sick and went to the bathroom to vomit. **ROBERSON** followed D.P into the bathroom,

where he pulled off her pants and underwear, then pulled out her tampon and digitally penetrated her vagina from behind her while she was leaned over the toilet. D.P. told **ROBERSON** "No" and "Stop." **ROBERSON** proceeded to penetrate her vagina with his penis. D.P. told **ROBERSON**, "No, it hurts;" however, **ROBERSON** did not stop. **ROBERSON** later took D.P. into his bedroom and continued to penetrate her vagina with his penis. **ROBERSON** did not wear a condom and did not ejaculate. D.P. attempted multiple times to get off the bed, but was pulled back onto the bed by **ROBERSON. ROBERSON** held her onto the bed and advised D.P. she "was too drunk to leave." D.P. reported when she became sober enough, she got off the bed, and **ROBERSON** drove her back to her residence. During the car ride, **ROBERSON** apologized to D.P. for taking advantage of the situation and blamed his behavior on his divorce.

10. On December 14, 2021, D.P. received a Sexual Assault Forensic Examination (SAFE). During the exam, D.P. reported penetration of her vagina as well as her anus. D.P. also reported **ROBERSON** sucked on both of her breasts. The report also noted medical personnel observed lacerations on D.P.'s right perineum and midline perineum, as well as micro-hemorrhage/micro-hematoma and ecchymosis (bruising) on her anterior distal rectum. D.P. also advised she inserted a tampon into her vagina following the alleged sexual assault. The tampon was seized during the exam along with vaginal swabs, perineal swabs, internal rectal swabs, external genitalia swabs, mons pubis swabs, a blood alcohol sample, and a urine toxicology sample. Additionally, the clothing D.P. wore the night of the incident was also seized by OPD and subsequently released to NCIS.

11. On January 24th, 2022, Tyler Sims was interviewed. Sims is co-workers with both D.P. and **ROBERSON** at Domino's on board Camp Pendleton. Sims stated D.P. texted him on the night of the incident and reported she was going to hang out with **ROBERSON**. D.P. later texted her and advised she was

5

"crossfaded," which Sims described as the result of consuming/utilizing both alcohol and marijuana. Sims explained he believed **ROBERSON** gave D.P. an edible. Sims stated he then sent D.P. multiple text messages, including one asking if D.P. made it home, but D.P. did not reply. Sims stated D.P. eventually replied; however, he could not recall if it was that night or the next morning. Sims explained when he picked up D.P. for work the day after the incident, D.P. told him **ROBERSON** raped her.

12. D.P. provided Special Agent (SA) Catherine Armstrong screenshots of the aforementioned text message conversation between her and Sims. Review of the messages revealed D.P. texted Sims at approximately 7:06 PM on December 13, 2021, and stated "*Hanging with rich…*" D.P. texted Sims again at approximately 11:21 PM and stated, "*Rich is being weird*," followed by, "*he keeps getting too close.*" The following day, at approximately 12:48 PM, Sims asked D.P., "*Did he rape you?*" to which D.P. responded "*yes...*".

13. On February 1, 2022, SA Armstrong contacted Lincoln Ingle, a manager at the Domino's Pizza location where D.P. and **ROBERSON** work. Ingle stated after the incident, **ROBERSON** informed him, he and D.P. were "fooling around" and "rubbing on each other" on the night of the alleged sexual abuse. Ingle stated **ROBERSON** explained he and D.P. were about to have sexual intercourse; however, **ROBERSON** stopped due to the age difference between himself and D.P. For reference, **ROBERSON** was 47-years-old and D.P. was 19-years-old at the time of the incident.

14. As part of the investigation, SA Armstrong took custody of D.P.'s SAFE kit, clothing worn the night of the alleged sexual abuse, and all other evidence associated with this investigation. On September 20, 2022, SA Armstrong executed a search warrant for the collection of **ROBERSON's** deoxyribonucleic acid (DNA) via buccal (oral) swabs. SA Armstrong subsequently submitted the aforementioned

SAFE kit and buccal swabs containing **ROBERSON's** DNA to the United States Army Criminal Investigation Laboratory (USACIL) for analysis/comparison. The results of the analysis/comparison conducted by USACIL revealed **ROBERSON's** DNA was detected on the left breast swab and right breast swab, as well as the mons pubis swab from D.P.'s SAFE kit.

15. On January 27, 2023, I received phone records from **ROBERSON**'s cell phone provider, Verizon Wireless, which confirmed that **ROBERSON** and D.P. had communicated over the phone during the time period leading up to the night the sexual abuse occurred. Additionally, the records revealed that **ROBERSON** had called D.P. approximately one day after the night the sexual abuse occurred.

16. Based on the facts of this investigation and my training and experience, I believe there may be relevant evidence located within the **Target Device**, specifically electronic communications, to include phone call logs and text messages between **ROBERSON** and D.P. during the following time period: September 1, 2021, through December 15, 2021. These communications are relevant to establish the interactions between D.P. and **ROBERSON** on the night in question and to determine the extent of any pre-existing relationship between D.P. and **ROBERSON**. Accordingly, there is probable cause to believe that evidence to support D.P.'s allegation that **ROBERSON** sexually assaulted her in violation of 18 U.S.C. §§ 2241 and 2244 will be found on the **Target Device**.

17. On January 11, 2023, **ROBERSON** was indicted by the grand jury under 18 U.S.C. §§ 2241 (Aggravated Sexual Abuse by Using Force) and 2244 (Abusive Sexual Contact without Permission).

18. **ROBERSON** was placed under arrest on February 2, 2023, at approximately 10:06 AM in the parking lot for the Domino's Pizza at Camp Pendleton where he is employed. At the time of his arrest, **ROBERSON** asked to

be provided the **Target Device** so that he could write down some important phone numbers. **ROBERSON** stated that the **Target Device** was located inside **ROBERSON**'s vehicle in an alley behind the Domino's Pizza. Arresting agents and **ROBERSON** drove approximately one minute to the location of **ROBERSON**'s vehicle at **ROBERSON**'s direction. **ROBERSON** asked arresting agents if his supervisor at Domino's Pizza, Mr. Joseph Gautreau, who was already located near **ROBERSON**'s vehicle, would be allowed to retrieve the **Target Device** from **ROBERSON**'s vehicle. Arresting agents authorized Gautreau to retrieve the **Target Device** from **ROBERSON**'s vehicle and Gautreau provided it directly to me. At that point, I seized the **Target Device** from **ROBERSON**.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic

hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN DATA**

22. The United States has attempted to obtain this information from D.P., but she no longer possesses the requested information. The United States obtained **ROBERSON's** cellphone records, which includes his call logs from September to December 2021 and his subscriber information. The records confirmed D.P. and **ROBERSON** communicated via telephone, but do not include text message content.

**CONCLUSION**

23. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2241 and 2244 are located on **Target Device**, as described

9

in Attachment A. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Celia M. Rosa, Special Agent
Naval Criminal Investigative Service

Attested to by the Applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 10th day of February, 2023.

_____
HONORABLE MICHAEL S. BERG
UNITED STATES MAGISTRATE JUDGE